**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHN W. LAWIT and
JOHN W. LAWIT, P.C.,

      **Plaintiffs,**

v.                                    **No. 13-cv-0835 SMV/LFG**

MANEY & GORDON, P.A.;
RICHARD H. MANEY;
JEFFREY L. GORDON; and
CHRISTIAN G. A. ZELLER;

      **Defendants.**

**ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

      THIS MATTER is before the Court on Defendants' Motion to Compel Arbitration [Doc. 6], filed on September 24, 2013.  Plaintiffs responded on October 21, 2013.  [Doc. 15].  Defendants replied on November 14, 2013.  [Doc. 23].  Oral argument was held on December 23, 2013.  [Doc. 27].  All parties have consented to proceed before the undersigned. [Doc. 17].  Having reviewed the briefing, oral argument, relevant law, and otherwise being fully advised in the premises, the Court finds that the Motion to Compel Arbitration is well-taken and shall be **GRANTED**.

**Introduction**

      Plaintiff John W. Lawit ("Lawit") is an experienced immigration lawyer, having practiced in Albuquerque for more than 30 years.  [Doc. 1-2] at 4.  Desiring to retire, he sold his practice to Defendant Maney & Gordon, P.A., a Florida law firm.  [Doc. 7] at 3; [Doc. 1-2] at 11.  The parties entered into an of-counsel contract dated November 2, 2012 (hereinafter "the contract").

[Doc. 7-1].  The contract provided that all assets of John W.  Lawit, P.C. would be transferred to Maney & Gordon, P.A., and that Maney & Gordon, P.A., would assume responsibility for all legal work for Lawit's clients.  *Id.* at 1.  Lawit was to serve as "of-counsel" to the firm for a period of six years, and Defendants were to pay him a decreasing percentage of the firm's revenues over those six years.  *Id.* at 2 & 4.  The contract included an arbitration clause: "In the event of dispute, the parties agree to resolve all issues by way of binding arbitration."  *Id.* at 5. At issue now are the validity and scope of that arbitration clause.

By February 2013, the relationship between the parties had begun to deteriorate. According to the Complaint, Lawit began receiving complaints from his former clients that Defendants were, *inter alia*, sending them inaccurate bills; failing to account for payments made; failing to return telephone calls; failing to provide accurate information about their cases; and otherwise failing to comply with the terms of the contract.  [Doc. 1-2] at 15.  On August 8, 2013, Lawit brought suit in state court on behalf of himself and John W. Lawit, P.C. (hereinafter collectively referred to as "Lawit" or "Plaintiffs").  He seeks to have the entire contract declared void due to fraud in the inducement.  *Id.* at 17.  He alleges that Defendants collectively engaged in intentional fraud, breach of fiduciary duty, unfair trade practices, negligence, prima facie tort, and civil conspiracy.  *Id.* at 18−23.  Lawit claims that Defendants not only breached their contractual obligations, but that they intended to do so from the outset.  *See id.* at 8.  Defendants removed the case to federal court based on diversity jurisdiction.  [Doc. 1].  They subsequently moved to stay these proceedings and to compel arbitration of all of Lawit's claims.  [Doc. 6].

Lawit argues that the parties agreed to arbitrate pursuant to the laws of New Mexico, and that under New Mexico law, none of his claims falls within the scope of the arbitration clause. [Doc. 15] at 14.  He also argues that the individual Defendants are not entitled to compel arbitration because they are not parties to the contract.  *Id.* at 7–9.  Defendants argue that this matter is governed by the Federal Arbitration Act ("FAA"), and that under the FAA, the agreement's validity and the scope of the arbitration clause are to be determined by the arbitrator. [Doc. 23] at 1–4.  Defendants contend that Lawit is estopped from denying arbitration to the individual Defendants.  *Id.* at 6–9.  Defendants are correct.  The agreement to arbitrate is valid, Lawit's claims fall within the scope of the arbitration clause, and all Defendants are entitled to compel arbitration.  Accordingly, the Motion to Compel Arbitration shall be granted.

**<u>Standard</u>**

The FAA generally applies to any contractual agreement to arbitrate that involves interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (noting that Congress intended the FAA to extend to the outer limits of its authority under the Commerce Clause).  A motion to compel arbitration is governed by Section 4 of the FAA.  *Ansari v. Qwest Commc'ns Corp.,* 414 F.3d 1214, 1218 (10th Cir. 2005).  Under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

In resolving questions of arbitrability, courts should be mindful of the "strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488–89 (10th Cir. 1994); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("Congress declared a national policy favoring arbitration."); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) ("[T]he FAA is a 'congressional declaration of a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (stating that Congress designed the FAA to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate, and to place such agreements upon the same footing as other contracts.) When the applicability of arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone*, 460 U.S. at 24–25).

## Analysis

"In adjudicating a motion to compel arbitration under the [FAA], courts generally conduct a two-step inquiry." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996); *see also Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000). First, the Court must look to the contract to determine whether the parties agreed to arbitrate. *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citing *Mitsubishi Motors*, 473 U.S. at 626). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."

*Mitsubishi Motors,* 473 U.S. at 628.  Second, the Court must determine whether Congress has imposed any additional legal restraints that would foreclose arbitration of the parties' claims. *Brown,* 462 F.3d at 396 (citing *Mitsubishi Motors,* 473 U.S. at 628).[1]

### I.  *Validity of the arbitration clause*

The question of arbitrability—whether a contract creates a duty for the parties to arbitrate a particular dispute—is undeniably an issue for judicial determination.  "Unless the parties clearly and unmistakably provide otherwise, the question of whether they parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs.,* 475 U.S. at 649.  Since the parties did not indicate whether they wanted the issue of arbitrability decided through arbitration, this Court must make this threshold determination.

Plaintiffs argue that Defendants' Motion to Compel Arbitration should be denied because the entire contract is void *ab initio* due to fraud in the inducement.  [Doc. 15] at 3.  However, Section 4 of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967) (holding "that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").  Thus, "a challenge to the validity of the contract as a whole, and not

---

[1] If the arbitration agreement is valid and the claims fall within the scope of the agreement, then the claims generally must go to arbitration.  However, Congress may preclude parties from waiving their judicial remedies. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 29 (1991); *AT&T Techs. v. Commc'ns Workers,* 475 U.S. 643, 650 (1986).  To show that Congress precluded a waiver of judicial remedies, Plaintiffs must show that Congress specifically enacted legislation prohibiting parties from waiving those remedies.  In the case at hand, Plaintiffs have shown no legal constraints imposed by Congress.  The Court, therefore, will not address this issue in its analysis. *See Walton v. Rose Mobile Homes LLC,* 298 F.3d 470, 473 (5th Cir. 2002) (finding that the burden to  show legal constraints is on party trying to avoid arbitration).

specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing v. Cardegna,* 546 U.S. 440, 449 (2006); *see also Brown,* 462 F.3d at 397 ("Where claims of error, fraud, or unconscionability do not specifically address the arbitration agreement itself, they are properly addressed by the arbitrator, not a federal court."); *Rojas v. TK Commc'n, Inc.,* 87 F.3d 745, 749 (5th Cir. 1996)).

In this case, the crux of the Plaintiffs' Complaint is that because Lawit was fraudulently induced into entering the contract, the entire contract should be declared void *ab initio.* [Doc. 1-2].   However, Plaintiffs make no claim of fraud or misrepresentation specifically addressed to the arbitration clause, and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing,* 546 U.S. at 445–46 (finding that an arbitration agreement is "enforceable apart from the remainder of the contract"); *see also Prima Paint,* 388 U.S. at 402–04; *Meyer v. Dans un Jardin, S.A.,* 816 F.2d 533, 538 (10th Cir. 1987) ("Even a claim of fraud in the inducement of the entire contract containing an arbitration clause is to be referred to arbitration pursuant to an application under 9 U.S.C. § 3.").

This case involves sophisticated parties who negotiated at arm's length and entered into a contract containing an arbitration agreement.   The Court makes no finding as to whether Lawit was fraudulently induced to enter into the contract as a whole.   But even if that proves to be the case, Lawit has made no allegation of any wrongdoing by Defendants with respect to the arbitration agreement.   Therefore, pursuant to the Supreme Court's ruling in *Buckeye*, this Court

is limited to reviewing fraud claims only with regard to the arbitration clause itself.  Based on the

submissions of the parties, the Court finds that the arbitration clause is valid and enforceable.

## II.  Scope of the arbitration clause

This does not end the Court's analysis.  I must now look at the language of the arbitration

clause to determine whether the disputes at issue in this case fall within the scope of arbitration

clause.  *See Cummings v. Fedex Ground Package Sys., Inc.,* 404 F.3d 1258, 1261 (10th Cir. 2005)

(citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping* & *Trading Inc.,* 252 F.3d 218, 224 (2d Cir.

2001)).

First, the Court must determine whether the arbitration clause is broad or narrow.  *Id.*  If

the clause is narrow, then the Court must look closely at whether the dispute falls within the

ambit of the clause or whether it is merely a collateral issue.  *Id.*  If the arbitration clause is

broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will

be ordered if the claim alleged implicates issues of contract construction or the parties' rights and

obligations under it."  *Id.* (quoting *Louis Dreyfus Negoce S.A.,* 252 F.3d at 224).  An arbitration

clause extending to "all claims, disputes, and other matters arising out of or relating to the

contract or breach of the contract," or similar language, is considered broad.  *See, e.g.*, *Prima*

*Paint,* 388 U.S. at 398 ("parties agreed to a broad arbitration clause, which read in part: 'any

controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be

settled by arbitration'"); *Moses H. Cone,* 460 U.S. at 5; *P&P Indus., Inc.* v. *Sutter Corp.*, 179

F.3d 861, 871 (10th Cir. 1999) ("such an arbitration clause, not limited to questions of

contractual interpretation, is a 'broad' one"); *Coors Brewing Co.* v. *Molson Breweries,* 51 F.3d

1511, 1515 (10th Cir. 1995); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 20 (2d Cir. 1995).

      The arbitration clause in this case states, "[i]n the event of dispute, the parties agree to resolve all issues by way of arbitration."  [Doc. 7-1] at 5.  I find that this is a broad arbitration clause, and that the parties intended to arbitrate not only claims directly relating to contractual interpretation of the terms of the contract, but all claims arising out of the contract.

      The Court is aware that the Tenth Circuit has cautioned against extending the scope of an arbitration clause beyond the reaches of the parties' contract, as this could produce "absurd results."  *Coors Brewing,* 51 F.3d at 1516.  For example, in *Coors Brewing* the court balked at the possibility that "two small business owners execut[ing] a sales contract including a general arbitration clause" might have to arbitrate a tort claim for assault under the sales contract.  *Id.* Consequently, the trial court must ensure that any claims sent to arbitration are reasonably related to the parties' contract.  *Id.*; *see also Long v. Silver,* 248 F.3d 309, 316–17 (4th Cir. 2001) (determining that the "governing standard for determining the arbitrability of [plaintiff's] claim[s] is whether [such] claims have a significant relationship to the . . . [contract].").

      In this case, however, it is clear that all of Plaintiffs' claims arise out of Defendants' alleged failure to comply with the terms of the contract.  *See* [Doc. 1-2].  Although Plaintiffs do not phrase their claims in breach-of-contract terms,[2] I am satisfied that all claims raised in the

---

[2]  It is well-established  that a party cannot avoid arbitration by simply casting its complaint in tort instead of contract. *See Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.,*  567 F.3d 1191, 1198 (10th Cir. 2009) ("Focusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting  around  an otherwise-applicable arbitration  clause."); *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 527 (5th Cir. 2000); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,*  10 F.3d 753, 757–58 (11th Cir. 1993); *Hughes Masonry  Co., Inc. v. Greater Clark Cnty. Sch. Bldg.  Corp.,* 659  F.2d 836,  838  (7th Cir. 1981); *Acevedo*

Complaint "have a reasonable factual connection to the contract." *Coors Brewing*, 51 F. 3d at 1515–17. The parties freely bargained for and incorporated a broad arbitration clause into their contract. Therefore, the Court must presume that they intended to resolve any dispute reasonably related to the contract through arbitration. *See Cummings*, 404 F. 3d at 1261 ("Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim implicates issues of . . . the parties' rights and obligations under [the contract]."); *P&P Industries, Inc.,* 179 F.3d at 871 ("We must keep in mind that the strong presumption in favor of arbitrability applies with even greater force when such a broad arbitration clause is at issue." (internal citations and quotations omitted)).

Finally, the Court will address Plaintiffs' argument based on the choice-of-law provision in the contract. The arbitration clause is contained in paragraph 29 of the contract. [Doc. 7-1] at 5. That paragraph also contains the following language: "This agreement shall be construed according to the laws of the State of New Mexico." *Id.* Citing this language, Plaintiffs argue that "any issue concerning arbitration must [therefore] be resolved by the application of New Mexico law[, and u]nder New Mexico law, Defendants cannot compel arbitration." *See* [Doc. 15] at 4. Plaintiffs' argument from that point on is difficult to follow. First, Plaintiffs argue that the arbitration clause is ambiguous. *Id.* at 11–13. Plaintiffs then make the following conclusory statement: "At best, it is ambiguous whether the parties intended, or even contemplated, that the one sentence [arbitration clause] included arbitration of tort claims." *Id.*

---

*Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 616 (1st Cir. 1975). Provided the claims have a "reasonable factual connection to the contract" the trial court may compel arbitration. *Coors Brewing,* 51 F.3d at 1516; *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir. 1987) ("If the allegations underlying the claims 'touch matters' covered by the parties' [contract], then those claims must be arbitrated, whatever the legal labels attached to them.").

at 14.  The argument seems to be that since the parties drafted the arbitration clause ambiguously (a premise with which the Court does not agree), it must be presumed that they intended the arbitration clause to cover contractual claims, but not tort claims.   I find this argument unpersuasive for several reasons.

First, the Court disagrees that the arbitration clause is ambiguous.  I find that the parties drafted the arbitration clause broadly to reflect their intention that all claims reasonably related to the contract be decided through binding arbitration.

Second, Plaintiffs' argument would put a strained interpretation on the arbitration clause. Plaintiffs argue that the arbitration clause is ambiguous, essentially because it is drafted so broadly (". . . the parties agree to resolve all disputes by way of binding arbitration.").  They then argue that this ambiguity should be resolved by narrowly interpreting the clause.  This is akin to having one's cake and eating it too.   Moreover, the argument, if valid, proves too much. Plaintiffs argue that because the parties did not expressly include tort claims in the arbitration clause, they must have intended that tort claims related to the contract would not be subject to arbitration.  But contractual claims are not expressly mentioned, either.  Does this mean that by agreeing to arbitrate "all issues," the parties really intended to arbitrate no issues?

Finally, Plaintiffs offer no authority for the proposition that under New Mexico law a broad arbitration clause, if found to be ambiguous, should be interpreted to include contractual claims but not tort claims that arise from and relate to the contract.  Indeed, the Court believes that New Mexico law compels the opposite conclusion.  New Mexico has a strong public policy in favor of resolving disputes through arbitration, *Horne v. Los Alamos Nat'l Sec., L.L.C.*,

2013-NMSC-004, ¶ 16, and allows parties to agree to arbitrate all future disputes "in an unlimited manner," *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 57, 131 N.M. 772, 790.   Furthermore, "[w]hen the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless *the parties themselves* limit arbitration to specific areas or matters."   *Horne,* 2013-NMSC-004, ¶ 38 (emphasis in original).   To interpret the scope of a broad arbitration provision, New Mexico courts compare the subject matter of the dispute with the subject matter of the underlying agreement.   *Campos v. Homes by Joe Boyden, L.L.C.*, 2006-NMCA-086, ¶ 9, 140 N.M. 122, 125.   Claims that arise out of the parties' relationship by contract and reasonably relate to the subject matter of a contract are arbitrable.   *See Monette v. Tinsley*, 1999-NMCA-040, ¶ 22, 126 N.M. 748 (determining that a misrepresentation claim was arbitrable because it "arose from the parties' relationship by contract" and was reasonably related to the subject matter of the contract); *accord Clay v. New Mexico Title Loans, Inc.*, 2012-NMCA-102, ¶¶ 14 & 25 (noting that "[i]n order to fall within the scope of the arbitration clause, the claims at issue must bear a 'reasonable relationship' to the contract in which the arbitration clause is found," and examining the facts underlying the claims to determine whether such relationship exists.)   Here, the parties formed a contractual relationship, and Plaintiffs' claims arise from and are reasonably related to that relationship.   Accordingly, Plaintiffs' tort claims are subject to arbitration under New Mexico law.

### III.  All Defendants are entitled to compel arbitration

Lawit argues that the individual Defendants cannot compel arbitration because they are not parties to the contract.[3]  [Doc. 15] at 7–9.  Whether a nonparty can compel arbitration under a contract is a question of state law.  *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630 (2009).  New Mexico law generally provides that nonparties to an agreement cannot compel arbitration.  *Horanburg v. Felter,* 2004-NMCA-121, ¶ 16, 136 N.M. 435, 439.  However, New Mexico courts have acknowledged an exception to this rule based on equitable estoppel.  *See Frederick v. Sun 1031, LLC*, 2012-NMCA-118, ¶¶ 26–32 (applying the equitable estoppel exception).  Equitable estoppel prevents a party to a contract from denying arbitration to a nonparty (1) where "the signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory;" or (2) where "a signatory alleges [substantial interdependence] and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless."  *Id.* ¶ 26 (alterations in original).  Additionally, New Mexico courts have suggested that nonparties may be able to compel arbitration based on an agency theory.  *See Horanburg*, 2004-NMCA-121, ¶¶ 16–18 (discussing federal case-law holding that agents, employees, and representatives are covered under the terms of the arbitration agreement that binds the principal).

Here, Lawit's claims all arise from Defendants' alleged failure to comply with the terms of the contract.  *See* [Doc. 1-2] at 12–15 (listing contractual obligations that Defendants have failed to comply with).  Resolution of those claims would necessarily require resolution of

---

[3]  Although Defendant Maney signed the contract, Lawit argues that the contract specifies that the only parties are Plaintiffs and Defendant Maney & Gordon, P.A.  [Doc. 15] at 8.

Defendants' obligations under the contract.  As a result, Lawit's claims necessarily rely on the terms of the contract, and thus Lawit is equitably estopped from denying arbitration to the individual Defendants.  "In short, although arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory, a signatory to that agreement *cannot* . . . 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."  *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 528 (5th Cir. 2000) (citing *MS Dealers Serv. Corp. v. Franklin*, 177 F. 3d 942, 947 (11th Cir. 1999)).

Additionally, the Complaint specifically alleges that "the [D]efendants and each of them, conspired to defraud and steal Lawit's business, to commit breach of fiduciary duty, and to engage in unfair and unconscionable practices . . . ."  [Doc. 1-2] at 22–23.  The Complaint alleges all claims against all Defendants jointly.  *See* [Doc. 1-2] at 2 ("[W]hen used in this complaint [Maney & Gordon, P.A.,] means and includes each individual Defendant.") "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."  *Grigson,* 210 F.3d at 527.  Lawit cannot in one breath argue that the individual defendants were acting in conjunction with and on behalf of Maney & Gordon, a signatory to the contract, and in the next argue that the individual defendants cannot compel arbitration because they are non-signatories—"to allow such inconsistent positions would be inequitable, to say the least."

13

*Id.* at 528.  Because Lawit has alleged "[substantial interdependence] and concerted misconduct by both another signatory and a non-signatory" such that arbitration between only the signatories to the contract would be meaningless, *Frederick*, 2012-NMCA-118, ¶ 27, he is equitably estopped from denying arbitration to the individual Defendants.

Finally, the Complaint names each individual Defendant in his capacity as a "principal officer, shareholder[,] and director."   [Doc. 1-2] at 3–4.   Because the individually named Defendants have all been named in their capacities as officers and directors of Maney & Gordon, P.A., they should thus be able to compel arbitration on the basis that their principal is contractually bound to arbitrate.  *See Hicks v. Cadle Co.*, 355 F. App'x 186, 193 (10th Cir. 2009) (unpublished) (finding that two nonparties were bound to arbitrate claims as agents of the principal); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (noting that if a party "can avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties . . ., or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.").

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Compel Arbitration [Doc. 6] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall, within 30 days, either jointly select an arbitrator or move the Court to appoint one pursuant to 9 U.S.C. § 5.  The parties shall then proceed to arbitrate all claims in Plaintiffs' Complaint [Doc. 1-2].

**IT IS FURTHER ORDERED** that proceedings in this case shall be stayed, pursuant to 9 U.S.C. § 3.  The Court will retain jurisdiction for the purpose of issuing and enforcing subpoenas and to confirm the arbitrator's award.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**